UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:09-CV-235-H

KATHY JO SPAGNOLA                                                    PLAINTIFF

V.

HUMANA, INC.                                                        DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Kathy Spagnola, brought this employment litigation claim against her former employer, Defendant Humana, Inc.,[1] asserting violations of multiple rights as a result of her termination.  Specifically, Plaintiff brings the following claims: (1) sexual discrimination; (2) sexual harassment in the form of a hostile work environment; (3) retaliation for complaints about sexual harassment and discrimination;[2] (4) violations of the Family Medical Leave Act ("FMLA"); (5) wrongful discharge; and (6) intentional infliction of emotional distress.

At this time, Defendant moves for summary judgment on all claims, arguing that Plaintiff has produced insufficient evidence to present this case to a jury.  The Court will address each claim separately.

---

[1] Defendant contends that Plaintiff has improperly sued Humana, Inc., as Plaintiff's true employer, and thus the proper Defendant for this action, was Humana Insurance, Co., a wholly owned subsidiary.  Because the outcome does not depend on the true identity of the proper defendant, the Court will assume, for purposes of this Memorandum Opinion, that Plaintiff has sued the correct entity.

[2] All of Plaintiff's sexual harassment and discrimination claims are based on the Kentucky Civil Rights Act. However, that statute is interpreted in accord with federal civil rights statutes and governed by the same standards. *See Hall v. Transit Authority of Lexington-Fayette Urban County Gov't*, 883 S.W.2d 884, 886 (Ky. Ct. App. 1994) ("Since Kentucky's statute is similar to the federal statute, the Kentucky Supreme Court in *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814 (1992), held that KRS 344.040 'should be interpreted consonant with federal interpretation.'").

# I.

As they are important to this decision, the Court will discuss the facts at some length.

Plaintiff began working for Humana in August of 1996. Throughout her 11 years there, Plaintiff held numerous positions in a variety of departments. There is no evidence of any problems in her work history until March of 2006, when Plaintiff was promoted to the position of Coordination of Benefits ("COB") Process Manager. It is that position, and the difficulties Plaintiff encountered there, that led to this action.

When Plaintiff took the COB Process Manager position, her immediate supervisor was Toni Hertel. Plaintiff asserts no claims based on Ms. Hertel's actions and agrees that no gender discrimination occurred during that time. However, Ms. Hertel has submitted an affidavit detailing Plaintiff's performance problems while under her supervision. She describes Plaintiff's general performance as "substandard" and specifically details how Plaintiff failed to adequately understand the work assigned to her or respond timely to email and voice mail messages. According to Ms. Hertel, she tried to help Plaintiff understand the required work, but her performance problems continued through the entirety of Hertel's tenure. These performance problems were relayed to Ms. Hertel's manager, Cathy Thompson, who remained the manager of Plaintiff's supervisor until October of 2006. Plaintiff offers no evidence to refute these performance related claims.

In September of 2006, Doug Coenson replaced Ms. Hertel as Plaintiff's immediate supervisor. All of Plaintiff's claims are based on Mr. Coenson's actions. Mr. Coenson's affidavit provides that shortly after replacing Ms. Hertel, he too found Plaintiff's performance to be "substandard." The specific problems listed by Mr. Coenson are the same as those listed by

Ms. Hertel: failure to understand the projects assigned to her, inability to explain her reports, and failure to timely respond to email and voice mail messages.  Further, he states that Plaintiff frequently arrived late, left early or missed work entirely.  Although Plaintiff claims that "[i]n March of 2007, Coenson began to make false accusations about the quality of Spagnola's work," (Spagnola Aff. ¶ 14), Plaintiff has offered no evidence of specific false accusations or any information to indicate that the performance problems raised by Mr. Coenson are false.  In fact, Plaintiff admits that she needed to improve her timeliness in responding to emails and voice mails and that others in the company had complained about this aspect of her work.  (Spagnola Dep. 192:17-193:13, Feb. 24, 2009.)

There is no indication in the record that Plaintiff ever complained to any manager or human resources representative about sexual discrimination or any perceived preferential treatment of males by Mr. Coenson.  However, it does appear that Plaintiff frequently complained that her work load was over burdensome and that she needed training and assistance. In November of 2006, Mr. Coenson arranged for Plaintiff to attend a week long training session in Green Bay, Wisconsin.  Plaintiff agrees that this training was helpful and that she did not understand all of the work expected of her prior to the training.  Defendant's affidavit evidence provides, however, that Plaintiff's work performance remained substandard even following the training and, again, Plaintiff has offered no evidence to rebut these claims.

In December of 2006, Mr. Coenson completed his annual review of Plaintiff and discussed that review with her.  Mr. Coenson scored plaintiff with the lowest possible score under the "competency" and "contribution" categories.  Although Plaintiff claims to have complained about this review to her peer group, she admits that she never complained to the

human resources department or any of her supervisors.  (Spagnola Dep. 214:9-216:3.)

In addition to the affidavits of Mr. Coenson and Ms. Hertel, Defendant has offered the affidavits of Cathy Thompson and Tara Kremer, who replaced Ms. Thompson as Mr. Coenson's manager in December of 2006.  Both Ms. Thompson and Ms. Kremer personally observed Plaintiff's work performance and describe it as "substandard."  They confirm the specific complaints made by Hertel and Coenson.  Plaintiff agrees that none of the views of Thompson or Kremer are biased on the basis of gender.  (Spagnola Dep. 190:16-22.)

Multiple meetings were held with Plaintiff to discuss her performance problems.  All of these problems and meetings culminated in Plaintiff being placed on a Competency and Contribution Improvement Plan ("CCIP") on March 2, 2007.  The CCIP again detailed Plaintiff's insufficient work performance and listed specific objectives Plaintiff must meet to improve her performance.  It stated, and Plaintiff understood, that her employment was dependant on successful completion of the CCIP.  (Spagnola Dep. 219:4-22.)  Further, Plaintiff testified that none of the information included in the CCIP review was biased on the basis of gender or sex.  (Spagnola Dep. 230:4-8.)

Shortly after the CCIP meeting, Plaintiff began inquiring about time off to tend to personal issues.  Plaintiff contacted human resources about the possibility of FMLA leave and inquired about the same with Mr. Coenson.  While Plaintiff claims this time off was needed to care for her son, it appears that Plaintiff neither told Defendant of any medical condition of her or any family member nor specifically requested FMLA leave.  Moreover, Plaintiff testified that she was in the middle of a messy divorce and "wanted just two weeks off because I knew I had to go back to court."  (Spagnola Dep. 70:22-24.)

4

While it is undisputed that leave under FMLA was not granted, it is equally undisputed that Plaintiff was given between four and five weeks vacation. Plaintiff had a bank of 6 weeks of vacation time available in March of 2007 and Mr. Coenson arranged for her to take approximately thirty days off and begin the CCIP upon her return. Oddly, Plaintiff complains both that FMLA leave was not granted and that she was "forced" to take a thirty day leave of absence. Regardless, Plaintiff returned to work and began the CCIP on April 26, 2007.

Shortly after returning, Plaintiff assumed the same responsibilities she had when she left. In addition, Plaintiff was assigned a supervisory role over the projects begun in her absence. It is clear that Plaintiff would have been responsible for these projects had they been begun while she was there, so it appears no "new" duties were assigned to Plaintiff. Additionally, Mr. Coenson informed Plaintiff that she may want to begin looking for a different position within Humana because she would be terminated in seven weeks if she failed to meet the CCIP requirements. This was, in essence, the same disclaimer put forth on the CCIP that Plaintiff agrees she understood. Plaintiff began seeking a transfer within Humana, but no positions were available.

Mr. Coenson and Ms. Kremer's affidavits reveal that Plaintiff's performance problems continued after her return. Plaintiff admits that she failed to meet some of the specific objectives set forth in the CCIP. (Spagnola Dep. 262:19-24.) Thus, on July 27, 2007, Defendant terminated Plaintiff. Plaintiff did not appeal the termination decision with the Associate Relations Department, as she understood she could do. (Spagnola Dep. 268:2-269:6.)

## II.

In Federal Court, even on state law claims, the Federal Rules of Civil Procedure govern motions for summary judgment. "The judgment sought should be rendered if the pleadings, the

5

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c). "The moving party has the 'initial responsibility of informing the district court of the basis for its motion, and identifying those portions' of the record showing an absence of a genuine issue of fact." *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Important to this case, once that initial showing has been made, "the non-moving party must come forward with '*specific facts* showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)) (emphasis added). "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

Defendant filed multiple affidavits to support its Motion for Summary Judgment. Moreover, Defendant places great reliance on the deposition testimony of the Plaintiff herself. In response, Plaintiff has filed only an affidavit that literally cuts and pastes the factual allegations of the Complaint. Plaintiff offers no specific facts and, at times, Plaintiff's affidavit contradicts her sworn deposition testimony. With this record in hand, the Court will examine Defendant's motion.

### III.

Plaintiff's first claim is for sexual discrimination. The Complaint asserts, "The Defendants [sic] actions in discharging Spagnola constitute gender discrimination and unlawful discharge under the Kentucky Civil Rights Act, Chapter 344 *et. seq.*" (Compl. ¶ 40.) KRS §

344.040, like Title VII of the federal Civil Rights Act of 1964, provides, "It is an unlawful practice for an employer . . . to discriminate against an individual with respect to compensation,, terms, conditions, or privileges of employment because of the individual's . . . sex." The U.S. Supreme Court has established a multi-step burden shifting analysis for sexual discrimination lawsuits. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The Court has analyzed Plaintiff's claim under each step and concludes that it fails for multiple reasons.[3]

### A.

For the first step,

> [i]t is well-established that the burden is on an employment discrimination plaintiff to establish a prima facie case of discrimination. . . . Plaintiff can establish a prima facie case of discrimination by showing that (1) she was a member of a protected class; (2) she was discharged; (3) she was qualified for the position; and (4) she was replaced by a person outside the class.

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citations omitted). If Plaintiff fails to produce evidence sufficient to raise a jury question as to any of these elements, summary judgment is appropriate. It is undisputed that Plaintiff has established the first two elements; Plaintiff was a female and was discharged. The ultimate question, then, is whether Plaintiff has produced sufficient evidence to proceed as to the third and fourth elements.

Defendant first argues that Plaintiff was not qualified for the position she held. "In order to be 'qualified' for her position, [Plaintiff] must demonstrate that she was meeting her employer's legitimate expectations and was performing to her employer's satisfaction." *Warfield v. Lebanon Correctional Inst.*, 181 F.3d 723, 729 (6th Cir. 1999). Most importantly,

---

[3] The Court only engages in the *McDonnell Douglas* burden shifting analysis where there is no credible, direct evidence of discriminatory intent. No such evidence has been submitted and Plaintiff seemingly agrees that this case should be governed by *McDonnell Douglas*.

Plaintiff admits that she failed to meet specific objectives set forth in the CCIP.  Plaintiff does not dispute that she failed to timely respond to emails and voice mails.  Plaintiff has offered no evidence indicating that she properly prepared reports and understood the work assigned to her. Put simply, Plaintiff has offered no evidence that she was meeting the legitimate expectations of her employer.[4]

At best, Plaintiff argues that the work asked of her was simply too much for one person to handle.  However, existing employees successfully completed all the work while Plaintiff was on leave and no new person was hired to replace Plaintiff when she was terminated.  Moreover, Plaintiff has presented no evidence suggesting that Defendant's expectations were illegitimate or even unreasonable.  Thus, Plaintiff's argument does not create material factual disputes precluding summary judgment.

Plaintiff has also failed to submit evidence sufficient to raise a jury question with respect to the last element.  Traditionally, Plaintiff must show that she was replaced by a male to show the final element of a prima facie case.  Defendant has presented affidavit evidence from Mr. Coenson that the COB Process Manager position was eliminated and that Plaintiff's work responsibilities were assigned to Angie Wingfield, a female.  Moreover, Ms. Wingfield, in her deposition, testified that she assumed Plaintiff's duties as owner of the COB process work.

In response, Plaintiff has submitted only her affidavit that states, "Coenson replaced Spagnola with a male employee."  (Spagnola Aff. ¶ 28.)  Plaintiff offers no specific evidence to

---

[4] In her affidavit, Plaintiff appears to allege that she was performing satisfactorily, but offers no evidence to support that contention.  This is not enough to survive the motion for summary judgment.  "[C]ourts have held that the mere submission of materials from a co-worker or supervisor indicating that an employee's performance is satisfactory does not create a material issue of fact."  *Warfield*, 181 F.3d at 729 (affirming summary judgment for failure to show the plaintiff was qualified for her position).  If affidavits of others indicating a general satisfactory performance are insufficient, certainly the generic affidavit submitted by Plaintiff is insufficient.

support this allegation.  The Court has reviewed Plaintiff's deposition and found that her belief a male received the job arises from a statement by a Humana employee in a different department that he thought a male took over Plaintiff's position.  This is hearsay, not actual evidence.  This is far from sufficient evidence to raise a material dispute of fact related to whether a male took Plaintiff's position.  *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 584 (6th Cir. 1992) ("First of all, with regard to Plaintiff's hearsay Affidavit, the District Court correctly found that the Affidavit was not a proper Rule 56(e) affidavit because it was not made on personal knowledge and did not set forth 'facts' that would be admissible into evidence.").

Plaintiff could meet the fourth element by showing "that a comparable non-protected person was treated better."  *Id.* at 582.  The only evidence offered by Plaintiff to establish this element is the following allegation: "Coenson treated male employees in a more favorable manner than he treated female employees such as Spagnola."  (Spagnola Aff. ¶ 13.)  This bare allegation is simply insufficient.

> It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the "comparables" are similarly-situated in all respects.  Thus, to be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell*, 964 F.2d at 583.  Plaintiff has offered no specific evidence of any male employees at Humana who were similarly situated and engaged in similar performance problems that were not terminated.  Thus, Plaintiff has again failed to establish a prima facie case.

## B.

Even if Plaintiff could establish a prima facie claim, the burden under *McDonnell*

9

*Douglas* would shift to Defendant to establish a legitimate non-discriminatory reason for termination.  As described previously, Defendants have put forth substantial evidence of Plaintiff's substandard work performance and inability to meet legitimate expectations, which are certainly legitimate reasons to terminate.  Because Defendant has carried this burden, the final step of the analysis shifts the burden back to Plaintiff to establish that the proffered reason for termination was merely a pretext.  *Mitchell*, 964 F.2d at 584.  "A plaintiff can make this showing in one of three ways: (1) by showing that the proffered reason had no basis in fact; (2) by showing that the proffered reason did not actually motivate the employer's conduct; or (3) by showing that the proffered reason was insufficient to warrant the challenged conduct."  *White v. Columbus Metropolitan Housing Authority*, 429 F.3d 232, 245 (6th Cir. 2005).

Plaintiff has offered no evidence to support any of these three possibilities.  "Courts have repeatedly held that the plaintiff's denial of the defendant's articulated legitimate reason without producing substantiation for the denial is insufficient for a . . . discrimination claim to withstand a motion for summary judgment."  *Mitchell*, 964 F.2d at 585. Plaintiff's only attempt at showing pretext is a bare denial.  Moreover, Plaintiff has admitted to several of the performance problems, has offered no evidence that her performance problems did not actually motivate her termination, and does not argue that an inability to meet an employer's legitimate expectations is insufficient to justify termination.  Thus, Plaintiff has not made the requisite showing under *White*.

Under the evidence presented, Plaintiff cannot make out a sexual discrimination claim.

**IV.**

Although not specifically pled, Plaintiff's second claim appears to be for sexual

10

harassment by maintaining a hostile work environment.  Plaintiff asserts in her Response to Defendant's Motion for Summary Judgment that this claim is based on the fact that Mr. Coenson made gender offensive comments or took offensive actions on at least three occasions and "other evidence demonstrating that Humana'[s] gender discrimination was 'severe and pervasive.'" However, even Plaintiff's affidavit does not support this claim.  No where does Plaintiff provide any specific factual details about these "offense actions," including when they took place and what the actions actually were.  In fact, the affidavit never mentions offensive behavior. Likewise, Plaintiff has not even identified what the "other evidence" is.  At this stage, Plaintiff cannot simply rest on the allegations set forth in her Response.  Plaintiff must put forth affirmative evidence.  *See Celotex*, 477 U.S. at 324.

Despite Plaintiff's failure to specifically provide evidence, the Court has reviewed all of the record evidence in an attempt to support Plaintiff's claim.  In her deposition, Plaintiff was given several opportunities to detail any harassing behavior of any Humana employee and she established none.  Plaintiff agreed that no one ever made any sexist comments or other comments that were derogatory toward women or the female sex.  At most, Plaintiff stated that there may have been a few jokes made by Mr. Coenson, but she did not identify any specifics related to those jokes or even state that they were offensive.  Without evidence to support her claim, summary judgment is appropriate.

## V.

Plaintiff next claims that Defendant terminated her in retaliation for her complaints about Mr. Coenson's sexual harassment and discrimination.  To prove a prima facie claim for retaliation, Plaintiff must establish: (1) Plaintiff engaged in a protected activity; (2) that activity

was known by Defendant; (3) Plaintiff suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir. 1997). Defendant claims that the evidence adduced by Plaintiff is insufficient to create a jury question regarding the retaliation claim.

For the first element, Plaintiff alleges that she complained about Mr. Coenson's treatment of her and that was a protected activity. While complaining about sexual discrimination or harassment is undoubtedly a "protected activity," Plaintiff has again failed to put forth any evidence to support her claim. Plaintiff's affidavit merely restates the allegations of the complaint and generically pleads that "Spagnola complained to Humana officials about Coenson's gender discrimination." (Spagnola Aff. ¶ 16.) Under the federal standard, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and quotation omitted). Plaintiff's affidavit does nothing more than recite the basic element of a retaliation claim that the plaintiff must complain about discrimination or harassment. Without more factual support for this allegation, Plaintiff's claim cannot proceed.

Moreover, the Court has again reviewed Plaintiff's deposition for supporting evidence. Although repeatedly asked about complaints made, Plaintiff never testifies that she complained to management about any form of gender discrimination or harassment. Plaintiff directly admits that she never complained to Mr. Coenson, to any supervisor in her department or to human resources about gender discrimination. At best, Plaintiff complained to peers and managers that she was overworked and that the expectations for her job were too great. She may have

12

complained that Mr. Coenson gave work to others who were doing a better job, but she never alerted anyone to even a suspicion that this was occurring because of some form of discrimination. Such complaints are not protected activities. *See Fox v. Eagle Distributing Co., Inc.*, 510 F.3d 587, 591-592 (6th Cir. 2007) (affirming summary judgment for employer where employee complained generally about not getting a promotion and that management was out to get employee because employee provided no evidence that he "specifically alleged discriminatory employment practices in his" complaints to management).

Moreover, even if Plaintiff has established a protected activity, Plaintiff has failed to offer any evidence to support the second or fourth elements of her retaliation claim. There is no record evidence that anyone involved in Plaintiff's termination was aware of any complaints regarding gender discrimination. Additionally, Plaintiff has not produced any evidence of causation. The analysis set forth above in section III B regarding Defendant's legitimate, non-discriminatory reasons for terminating Plaintiff and Plaintiff's failure to provide evidence of pretext applies equally to this claim.

## VI.

For her fourth cause of action, Plaintiff pleads that "Humana terminated Spagnola's employment in violation of the Family and Medical Leave Act." (Amended Complaint ¶ 48.) The Sixth Circuit "recognizes two distinct theories for recovery under the FMLA: (1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." *Killian v. Yorozu Automotive Tennessee, Inc.*, 454 F.3d 549, 555 (6th Cir. 2006) (quoting *Hoge v. Honda of America Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004)). Plaintiff has failed to establish sufficient

13

evidence to proceed on either theory.[5]

### A.

An "interference" claim under FMLA is exactly what it sounds like; it is illegal for an "employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."  29 U.S.C. § 2615(a)(1).

> To prevail under the interference theory, the employee must establish the following: (1) he is an eligible employee; (2) the defendant is an employer; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of his intention to take leave; and (5) the employer denied the employee FMLA benefits to which he was entitled.[6]

*Wysong v. Dow Chemical Co.*, 503 F.3d 441, 447 (6th Cir. 2007) (quotations and citations omitted).  The Court will assume the first two elements are met.

To be entitled to FMLA leave, the plaintiff must establish that she or a family member suffered from a "serious health condition" necessitating the leave.  *See, e.g., Stimpson v. United Parcel Service*, , No. 08-2263, 2009 WL 3583466, at *5 (6th Cir. Nov. 3, 2009).  "The FMLA defines a 'serious health condition' as 'an illness, injury, impairment, or physical or mental condition that involves . . . inpatient care in a hospital, hospice, or residential medical care facility; or . . . continuing treatment by a health care provider."  *Id.*  In her Complaint and Response to Defendant's Motion for Summary Judgment, Plaintiff alleges that she needed time

---

[5] Plaintiff complains that the FMLA claim is new to the case and Plaintiff should be entitled to additional discovery.  However, the evidence necessary to overcome summary judgment is squarely within Plaintiff's control.  Moreover, the evidence submitted, primarily Plaintiff's own deposition, clearly establishes that Plaintiff will not be able to discover additional evidence allowing her FMLA claim to continue.

[6] A plaintiff may also establish an interference claim where the employer forces the employee to take FMLA leave when it is unneeded.  Plaintiff certainly complains in her deposition that she did not need an entire 30 day leave and that it was forced upon her, but Plaintiff agrees that it was not an FMLA leave.  Moreover, such a claim only ripens "when and if the employee seeks FMLA leave at a later date, and such leave is not available because the employee was wrongfully forced to use FMLA leave in the past."  *Wysong*, 503 F.3d at 449.  Plaintiff never again requested FMLA leave, so there can be no such claim.

14

off to tend to her son.  Although her deposition does mention that her son was seeing a counselor

for anxiety and related issues because of his parents' impending divorce and his father's

behavior, there is no evidence that meets the standard for a "serious health condition."

Moreover, Plaintiff testified,

> I initially asked Doug for two weeks off at the time that I wanted to get FMLA
> because my ex-husband came after me and my parents and - removed me and my son
> from the home and we stayed with family and friends for four days.  I asked Doug
> just to give me two weeks off because at that time . . . I just wanted just two weeks
> off because I knew I had to go back to court.

(Spagnola Dep. 70:14-24.)  Although Plaintiff was certainly experiencing personal problems,

there is no evidence that Plaintiff or her son suffered a "serious health condition."  Moreover, the

need to attend court to sort out divorce problems does not entitle a person to FMLA leave.

Even assuming Plaintiff was entitled to such leave and all other elements of her claim are

met, Plaintiff has not, and cannot, establish that she was in any way damaged by Defendant's

actions.  Although Defendant did not classify Plaintiff's time off as FMLA time, Defendant did

grant Plaintiff approximately 30 days vacation leave.  "[A]n employer may require the employee

. . . to substitute any of the accrued paid vacation leave, personal leave, or family leave of the

employee for leave provided under [FMLA] for any part of the 12-week period of such leave."

29 U.S.C. § 2612(d)(2)(A).  Thus, Plaintiff was given the time off she requested and Defendant

was well within its rights to make Plaintiff use accrued vacation time.  Simply because

Defendant did not label the leave as "FMLA leave" does not give Plaintiff an interference claim

and did not in any way injure Plaintiff.  The FMLA "provides no relief unless the employee has

been prejudiced by the violation."  *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89

(2002).

**B.**

An FMLA retaliation claim is analyzed like a gender discrimination retaliation claim.  To succeed, Plaintiff

> must demonstrate that: (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Killian*, 454 F.3d at 556.  As discussed above, Plaintiff has not proven that she engaged in an activity protected by FMLA because she has not shown that she was entitled to FMLA leave.  Moreover, Plaintiff has again failed to present evidence that the legitimate, non-discriminatory reasons for her termination proffered by Defendant were merely pretext.  Thus, like her gender discrimination retaliation claim, Plaintiff's FMLA retaliation claim cannot continue.

**VII.**

Plaintiff's final two claims are wrongful termination and intentional infliction of emotional distress.  It is well-accepted law in Kentucky that both of these common law tort claims are preempted by the Kentucky Civil Rights Act where the basis of the wrongful discharge is the same as the basis for a claim under the act.  *See Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985) ("[T]he same statute which would provide the necessary underpinning for a wrongful discharge suit where there is sufficient evidence to prove sex discrimination in employment practices also structures the remedy. The statute not only creates the public policy but preempts the field of its application."); *Wilson v. Lowe's Home Center*, 75 S.W.3d 229, 239 (Ky. Ct. App. 2001) (a plaintiff's intentional infliction of emotional distress claim is "subsumed by his KRS Chapter 344 claims").  Thus, Plaintiff cannot proceed on these last two claims.

The Court will enter an Order consistent with this Memorandum Opinion.

cc:     Counsel of Record